FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 15, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>           v.<br><br>CRISTIAN ESPINOZA-SANCHEZ,<br><br>                    Defendant. | No. 4:19-cr-06014-SMJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

On October 10, 2019, the Court heard oral argument on Defendant's Motion to Dismiss Indictment, ECF No. 41. At the conclusion of the hearing the Court took the matter under submission. The Court is now fully informed, and for the reasons that follow, grants the motion and dismisses the Indictment.

**BACKGROUND**

Defendant Cristian Espinoza-Sanchez is charged with illegally reentering the United States after previously being removed, in violation of 8 U.S.C. § 1326. ECF No. 1. Defendant was born in Mexico and came to the United States to live with his parents at age thirteen. ECF No. 41 at 3. He lived in eastern Washington for many years, working on farms and paying taxes on his earnings. *Id.* at 4. Defendant shares

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 1

two daughters with a woman from whom he separated after a domestic violence incident in November 2017. *Id.*

Defendant was arrested for that incident, apparently the only crime with which he has ever been charged. *See* ECF No. 51-1 at 3. According to police reports, Defendant's then-girlfriend (the father of his two children) told him she would not marry him for the immigration benefits. ECF No. 51-1 at 3. The police reports and victim's statement indicate that Defendant became angry and beat her in the face with his fists and children's toys, and at one point pinned her to the bed and choked her. *Id.* at 3–6. The victim was pregnant at the time of the assault. *Id.* After his arrest, Defendant was released and immediately taken into immigration custody. ECF No. 41 at 4.

## A. Immigration Proceedings

Immigration proceedings against Defendant began when the Department of Homeland Security issued a Notice to Appear (NTA) alleging that Defendant was a citizen of Mexico in the United States without legal authorization and therefore subject to removal. ECF No. 41-1 at 1. The NTA, dated November 17, 2017, directed Defendant to appear for a removal hearing in Tacoma, Washington on a date "to be set" at a time "to be set." *Id.* On December 4, 2017, a Notice of Hearing (NOH) was sent to Defendant by mail notifying him that a hearing was set for 8:30 AM on January 10, 2018. ECF No. 51-1 at 12.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 2

At that hearing, Defendant appeared before an immigration judge (IJ). *See* ECF No. 41-4. Defendant was represented by an attorney. ECF No. 51 at 8. Prior to the hearing, Defendant submitted a packet of documents consisting of the birth certificate of one of his daughters, title to a vehicle owned in his name, a lease in his name, ten letters of support from friends and family—including one from the mother of his daughters and alleged victim—and two years of federal tax returns. *See* ECF No. 51-1 at 15–41. Near the beginning of the hearing, the IJ clarified that Defendant did not wish to pursue an asylum claim or another form of relief based on fear of returning to Mexico, and the IJ later confirmed this. *See* ECF No. 41-2. Defendant's immigration attorney then requested a discretionary form of relief known as "voluntary departure," which if granted permits an inadmissible alien to depart the country voluntarily, rather than under an order of removal. *Id.* Defendant's immigration attorney requested voluntary departure in the event that Defendant's ex-girlfriend chose to later petition for his lawful admission to the country, which would be more difficult if Defendant was ordered removed. *Id.*

The IJ was silent for about twenty seconds. *Id.* Defendant's immigration attorney then spoke, commenting that the police report "does not paint a pretty picture," but urging the IJ to consider the prospect of reconciliation between Defendant and his alleged victim when evaluating how the domestic-violence arrest weighed into the equities of his request. *Id.* The IJ commented on the graphic nature

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 3

of the alleged assault, noted inconsistency between the letter submitted by the alleged victim and her contemporaneous statements to police, and observed that a restraining order remained in place. *Id.* Defendant's immigration attorney briefly argued that the allegations should be discounted because they were not findings of guilt. *Id.* The Government voiced opposition to voluntary departure. *Id.* The IJ concluded: "I have considered the matter and I am going to deny voluntary departure as a matter of discretion." *Id.*

The IJ then asked if Defendant wished to appeal the decision. *Id.* Defendant's immigration attorney whispered to Defendant "Do you want to appeal?" and Defendant, after a brief pause, quietly replied "no." *Id.* At oral argument, Defendant testified that during the pause, he looked to his immigration attorney because he did not understand what an appeal was, and she shook her head in a manner he interpreted to mean that he should say "no." When the IJ asked Defendant directly, Defendant's immigration attorney told him to "say it out loud," and Defendant more loudly confirmed that he waived his right to appeal. *Id.* The IJ then entered the final order of removal, ECF No. 41-4.

Defendant was subsequently removed. In February 2019, he was arrested for failure to appear in the state criminal case stemming from the domestic violence incident. He was subsequently indicted for illegal reentry. ECF No. 1.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT **-** 4

**LEGAL STANDARD**

A defendant charged with illegal reentry may attack the validity of the underlying order of removal. 8 U.S.C. § 1326(d). An alien making such a challenge must prove three things: (1) that the alien exhausted available administrative remedies; (2) that the proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) that the removal order was "fundamentally unfair." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting 8 U.S.C. § 1326(d)). Fundamental unfairness means that the removal proceedings violated the alien's due process rights and that those violations resulted in prejudice. *Id.* at 1202.

**A.  Voluntary Departure**

An alien is eligible for voluntary departure in lieu of removal if he can show "that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." *Villanueva-Franco v. I.N.S.*, 802 F.2d 327, 329 (9th Cir. 1986) (citing 8 U.S.C. § 1254(e)); *see also* 8 C.F.R. § 1240.26(b)(1)(i)(A)-(D) (enumerating requirements for voluntary departure).

However, "statutory eligibility does not entitle an alien to voluntary departure." *Villanueva-Franco*, 802 F.2d at 329. Instead, "the alien carries the burden of demonstrating both statutory eligibility and equities to merit the favorable exercise of discretion." *Id.* When the record before the IJ "contains an inference"

that the alien is eligible for voluntary departure, "the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *Moran–Enriquez v. I.N.S*, 884 F.2d 420, 422–23 (9th Cir. 1989)).

Once the alien has shown statutory eligibility, the decision to grant voluntary departure is vested to the discretion of the IJ. *Campos-Granillo v. I.N.S.*, 12 F.3d 849, 852 (9th Cir. 1993), *as amended* (9th Cir. 1994). In reaching his decision, the IJ is not bound by the Federal Rules of Evidence. Rather, "the tests for admissibility are fundamental fairness and probativeness." *Martin-Mendoza v. I.N.S.*, 499 F.2d 918, 921 (9th Cir. 1974). Thus, the IJ may consider "the fact of arrest, insofar as it bears upon whether an alien might have engaged in underlying conduct" relevant to the IJ's decision. *Paredes-Urrestarazu v. I.N.S.*, 36 F.3d 801, 810 (9th Cir. 1994).

In evaluating an application for discretionary relief, the IJ must "weigh favorable and unfavorable factors by 'evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively.'" *Campos-Granillo*, 12 F.3d at 852 (quoting *Matter of Edwards*, 20 I. & N. Dec. 191, 195 (BIA 1990) (Morris, concurring)). Although the IJ must provide more than "mere conclusory statements" in announcing his decision, "all that is necessary is a decision that sets out terms sufficient to enable [] a reviewing court to see that the [IJ] has heard, considered, and decided." *Villanueva-Franco*, 802 F.2d at 330 (citing

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 6

*Dragon v. I.N.S.*, 748 F.2d 1304, 1306 (9th Cir. 1984); *see also Osuchukwu v. I.N.S.*, 744 F.2d 1136, 1142–43 (5th Cir. 1984). The IJ's decision may be announced orally or in writing; if the decision is announced orally, a written summary memorandum must follow. 8 C.F.R. § 1003.37(a).

**B.     Ineffective Assistance of Counsel**

Although there is no constitutional right to an attorney in removal proceedings, due process requires that an alien who is represented by counsel receive effective assistance. *See Dearinger v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000). To establish that this right was violated, the alien must show "not merely ineffective assistance of counsel, but assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing." *Magallanes-Damian v. I.N.S.*, 783 F.2d 931, 933 (9th Cir. 1986). Thus, to prevail, a defendant must show (1) that "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) prejudice." *United States v. Lopez-Chavez*, 757 F.3d 1033, 1041 (9th Cir. 2014) (citing *Lin v. Ashcroft*, 377 F.3d 1014, 1023 (9th Cir. 2004)).

These requirements are satisfied when an alien's attorney ignores the "constitutionally imposed duty to consult with [the alien] about an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000); *see also Dearinger*, 232 F.3d at 1045 ("[T]he holding of *Flores–Ortega* applies with equal force to claims of ineffective

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 7

assistance of counsel arising out of the Fifth Amendment right to due process."). The "duty to consult" arises when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. In evaluating whether either of these elements have been established, the Court "take[s] into account all the information counsel knew or should have known" at the time. *Id.* If a defendant succeeds in establishing either, "prejudice is presumed." *Dearinger*, 232 F.3d at 1045.

**DISCUSSION**

Defendant argues that the predicate order of removal was fundamentally unfair for two reasons,[1] to which the Court now turns.

**A.  IJ's Failure to Adequately Consider Voluntary Departure**

Defendant first argues that the IJ failed to adequately consider the positive equities that weighed in favor of his application for voluntary departure before denying him relief. The parties appear to agree that Defendant was statutorily eligible for voluntary departure, and the IJ rightly permitted Defendant's attorney to

---

[1] Defendant argued in his original motion that a deficiency in the NTA—namely, the fact that it omitted the date and time of his removal hearing—warranted dismissal. ECF No. 41 at 8–17. Because the Court grants the relief sought on other grounds, it expresses no view as to the merit of this argument.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 8

argue that Defendant deserved it. It was Defendant's burden, however, to show that he "merit[ed] the favorable exercise of discretion." *Villanueva-Franco*, 802 F.2d at 329 (citing 8 U.S.C. § 1254(e)); *Arrieta*, 224 F.3d at 1076, 1079.

In support of his application, Defendant presented scattered documentary evidence of his good moral character, including tax returns, a vehicle title and residential lease, and letters of support, including one from the mother of his children and alleged victim. ECF No. 51-1 at 15–41. There was also, of course, one highly negative equity before the IJ—Defendant's violent assault of his then-pregnant girlfriend because she refused to marry him for immigration benefits. *See* ECF No. 51-1 at 1-7; ECF No. 41-1. It was well within the IJ's discretion to consider the fact of Defendant's arrest and the allegations contained in the police reports, even though Defendant had not been convicted of the charges. *Martin-Mendoza*, 499 F.2d at 921. Considering the totality of the evidence before the IJ, the Court concludes that he would have been justified in deciding that the domestic violence incident outweighed the evidence of Defendant's positive equities.

The Court cannot find, however, that the IJ *did* reach this conclusion, because the record contains no evidence that he considered the evidence of the positive equities. While the IJ need not have issued a written decision or expounded at length on the basis for his conclusion, he was nevertheless required to explain his reasoning such that this Court could determine that he considered *both* favorable and

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 9

unfavorable factors and had "heard, considered, and decided." *Campos-Granillo*, 12 F.3d at 852; *Villanueva-Franco*, 802 F.2d at 330. The record is insufficient to permit the Court to find that the IJ did so.

**B.     Ineffective Assistance of Counsel**

Defendant also argues that his immigration attorney's failure to consult with him about the possibility of appealing the IJ's decision violated his right to due process. Defendant testified that, at the time of his hearing, he did not understand he had the right to appeal the IJ's decision. And the parties agree that Defendant's immigration attorney never explained that right to him or consulted with him about his willingness to appeal. Defendant's immigration attorney had a constitutional obligation to do so if, in light of all the information she knew or should have known at the time, there was "reason to think . . . that a rational defendant would want to appeal (for example, because there [were] nonfrivolous grounds for appeal)." *Flores-Ortega*, 528 U.S. at 480.

As set out above, the IJ failed to adequately consider the positive equities of Defendant's application for voluntary departure. Thus, there was at least one nonfrivolous ground to appeal his decision. At oral argument, Defendant's immigration attorney testified that in her opinion, Defendant faced long odds on appeal—in her words, the IJ's decision denying voluntary departure would be overturned only if it amounted to an abuse of discretion. But the Board of

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 10

Immigration Appeals would have reviewed the IJ's decision *de novo*. 8 C.F.R. § 1003.1(d)(3)(ii). Whether Defendant's immigration attorney was expressing her practitioner's view of the likelihood of success or simply misunderstood the standard of review, the Court finds that there was a nonfrivolous ground for appeal. The only question, therefore, is whether Defendant has shown that a rational individual in his position would have wanted to appeal.

The Court concludes that Defendant has done so. The fact that Defendant and tens of thousands of other aliens apply for voluntary departure every year indicates that it is not a worthless form of relief. *See* U.S. Dep't of Justice, Exec. Office for Immigration Review, *Statistics Yearbook, Fiscal Year 2018* 13 (2019), https://www.justice.gov/eoir/file/1198896/download. And during fiscal year 2018 alone, 22,189 of those applications were successful, suggesting that relief was not necessarily beyond reach to Defendant.

At oral argument there was testimony that had Defendant received voluntary departure, it could have eased his path to legal admission into the country if he and the mother of his children subsequently reconciled. And had Defendant been granted voluntary departure in lieu of removal, he would not now stand charged with a violation of 8 U.S.C. § 1326. Defendant's immigration attorney knew—or at least should have known—these things at the time of the removal hearing. Mindful of the Supreme Court's guidance that the duty to consult will arise in the "vast

majority" of cases, the Court finds that a rational individual in Defendant's position could have considered an appeal worthwhile, and that Defendant's immigration attorney's failure to consult with him about that option rendered her assistance ineffective in violation of Defendant's right to due process. *Flores-Ortega*, 528 U.S. at 481.

**C.     § 1326(d) Factors**

Because Defendant has established that his attorney's ineffective assistance violated his right to due process, he has established fundamental unfairness. *See Dearinger*, 232 F.3d at 1045. Defendant's immigration attorney's ineffective assistance also deprived him of judicial review of the IJ's decision and excuses his failure to exhaust available administrative remedies. *United States v. Lopez-Chavez*, 757 F.3d 1033, 1044 (9th Cir. 2014). Accordingly, Defendant has satisfied the requirements to collaterally attack the underlying order of removal. *See* 8 U.S.C. § 1326(d).

## CONCLUSION

Defendant has shown that entry of the removal order underlying the offense with which he stands charged was fundamentally unfair for two reasons. First, the record before the Court is insufficient to establish that the IJ weighed the positive *and* negative equities when evaluating Defendant's application for voluntary departure. Second, Defendant's immigration attorney's failure to consult with him

regarding the right to appeal the IJ's decision rendered her assistance ineffective in violation of Defendant's right to due process. As such, the order of removal cannot serve as the predicate for this prosecution. The Indictment is dismissed.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss Indictment, **ECF No. 41**, is **GRANTED.**

2. All deadlines, all scheduled hearings, and the trial date are **STRICKEN**.

**DATED** this 15th day of October 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge